CORWIN McLAUGHLIN, by Next Friend, SEYMORE McLAUGHLIN, v. ANNA E. MARLATT and FRANK MARLATT, Administrators of Estate of LEWIS MARLATT, Appellants.

Division One, December 30, 1922.

1. **ASSAULT AND BATTERY: Trespass or Negligence: Intentional or Negligent Shooting Another: Pleading and Proof.** Allegations of facts constituting a cause of action for the recovery of damages for personal injuries wilfully inflicted are not sustained by proof of injuries negligently inflicted. A charge of an assault and battery is not sustained by proof that the personal injury was merely negligently inflicted. [Overruling Conway v. Reed, 66 Mo. 346.]

2. ———: ———: ———: ———: **Measure of Damages.** The statute requires that the petition shall contain "a plain and concise statement of the facts constituting the cause of action," and where one person is injured by the discharge of a fire-arm in the hands of another, he may have an action for assault and battery, if the shooting was intentional; or he may have an action for negligent injury, if the shooting was unintentional and the result of negligence. But the cause of action in the one case is different from that in the other, and both cannot arise on the same state of facts. Different elements of proof are required in the two actions, and the measure of recoverable damages is different.

3. ———: **Intentional Shooting: Contributory Negligence.** A petition charging that defendant "unlawfully and wrongfully shot the plaintiff with a shotgun loaded with gun powder and leaden balls, which shotgun the defendant then and there held in his hands" can be construed only as charging an intentional shooting, and a plea of contributory negligence to such a charge is a queer anomaly.

4. **NEGLIGENCE: Shooting Implied Invitee: Trespasser: Ordinary Care: Sufficient Evidence: Contributory.** In the afternoon of August 23rd defendant had been fishing near his premises. Foxes had been catching his chickens, and he took with him a shotgun, and as he returned he went through his bottom farm to a place where two young men were cutting brush. The three sat down on the ground and engaged in conversation. Just east of them was his corn field, bounded by a fence, along which were bushes three or four feet high, and beyond it was grass twelve to eighteen inches

high, and next to the grass was growing corn.  Plaintiff was six-
teen years old, knew where the young men were cutting brush and
started to the place to pay them a visit, going through the corn
field.  He had on new blue overalls, a blue-and-white striped jacket
and a hickory hat.  When he was two or three rows from the edge
of the corn field and seventy-five to one hundred feet from where
the three men were sitting, he could not see them, but did see the
hat of one of the young men and recognized his voice, and stoop-
ing over he got a clod and threw it in their direction to attract
their attention.  He threw a second clod, and still failing to at-
tract their notice, he stooped over to pick up another clod, and
just as he was straightening up defendant shot him.  Defendant
testified that one of the young men got up, moved towards the
fence and said it was a fox, and that without stopping to investi-
gate, except to observe that the grass was shaking, he shot into
the corn field.  *Held*, that plaintiff was not technically a tres-
passer, but an implied invitee, coming under an implied invitation
to visit his friends and consequently defendant cannot escape
liability on the theory that he owed plaintiff no duty except not
to wantonly or wilfully injure him; but, on the other hand, de-
fendant had the right to fire his gun on his own premises as often
as he pleased provided he exercised ordinary care not to endanger
the lives of others, and ordinary care in the use of firearms is a
very high degree of care.  *Held*, also, that, notwithstanding de-
fendant had no particular reason to anticipate plaintiff's presence
on his premises or within the direction and range of his gun, it
cannot be declared as a matter of law that he was not negligent,
if he closed his eyes and fired blindly without taking the slightest
precaution to ascertain who or what might be within the range of
his gun.  *Held*, also, that the evidence was sufficient to take the
case to the jury on the question of defendant's negligence, and it
was for them to say, under proper instructions, whether under
the circumstances he exercised ordinary care before shooting.
*Held*, also, that the evidence was sufficient to submit to the jury
the question of plaintiff's contributory negligence, for although he
did not know defendant was present or had a gun or was hunting
foxes, if after throwing the clods to attract their attention he laid
down in the tall grass so as to conceal himself and made the grass
wave or wriggle in such a manner as to induce the belief that a
fox was hiding therein, he should have anticipated that, even if
neither of the young men had a gun, a rock or other missile might
be thrown at him.

5. ———: Contributory: Mixed Question of Law and Fact: Instruc-
tions.  The instructions should not declare plaintiff's acts and con-

296 Mo.—42.

McLaughlin v. Marlatt.

duct to have been negligence where the question is one of mixed law and fact. It is for the jury to say, not only whether he did the acts defendant testifies he did, but whether a boy of plaintiff's age, in the exercise of ordinary care, would have anticipated that danger would likely flow from such acts, and therefore to say whether his acts, if established, constituted contributory negligence.

6. ———: Accident: Intentional Shooting: Instruction. To give an instruction for plaintiff which necessarily means that, if defendant intentionally shot at an object which he thought was a fox but which was plaintiff, he could not escape liability on the ground that the shooting was the result of his negligence, or misconduct, was error. The test of defendant's liability, under the facts of this case, was not defendant's intention to shoot, but his care or lack of care.

7. ———: No Knowledge of Plaintiff's Presence: Excuse for Shooting: Instruction. It is misleading to instruct the jury that the fact that plaintiff was on defendant's farm without the knowledge or consent of defendant was not "in itself" an excuse for shooting him; it should be further qualified by a direction that defendant's lack of knowledge of plaintiff's presence is a circumstance to be taken into consideration, with all the other facts and circumstances in the case, in determining whether defendant in shooting plaintiff was in the exercise of ordinary care.

8. ———: ———: Telling Defendant to Shoot: That Plaintiff Was a Fox: Instruction. While it is true "that the fact that some one with defendant told him to shoot, that plaintiff was a fox, would not of itself relieve defendant from liability" for shooting plaintiff, the fact that some one told him to shoot, and that the object concealed in the corn and grass and causing it to wiggle was a fox, is a circumstance that the jury may well take into consideration, with all the other facts in proof, in passing on defendant's negligence, and an instruction which minimizes its evidentiary value is erroneous.

Appeal from Livingston Circuit Court—*Hon. Arch B. Davis,* Judge.

REVERSED AND REMANDED.

*Lewis W. Reed, Thos. H. Hicklin* and *Scott J. Miller* for appellant.

McLaughlin v. Marlatt.

(1)   Plaintiff was a trespasser on the premises of defendant.   29 Cyc. 444.   And defendant owed plaintiff no duty except that of refraining from wantonly or wilfully injuring him. 29 Cyc. 442; Turner v. Thomas, 71 Mo. 596; Straub v. Soderer, 53 Mo. 38; Kelley v. Kelley, 217 Mo. 1; Witte v. Stifle, 126 Mo. 295; Smith v. Packing Company, 82 Mo. App. 9; Schmidt v. Distilling Co., 90 Mo. 293.   (2) The act of defendant, in shooting on his own premises at what he presumed to be a fox, without any knowledge on his part that plaintiff or any other person was on the premises and without anything to warn defendant that there might be some person in the vicinity, was not negligence.   Christy v. Hughes, 24 Mo. App. 275.   (3)   The court erred in giving Instruction 16.   The contention of defendant is that plaintiff being a trespasser, defendant had a right to shoot on his own land at any object he chose, just so he had no reason to believe there was any human being likely to be injured, and this instruction is misleading and erroneous in assuming that there was liability for damages.   This instruction assumes that plaintiff was seen and thought to be a fox.   Nothing was seen, only the grass moving. (4)   The court erred in giving Instruction 6. There is no contention that defendant had any right to shoot plaintiff and the instruction is misleading and erroneous.   (5) The court erred in giving Instruction 4.   Defendant was shooting, as he thought, at a fox on his own land where plaintiff had no right to be and where defendant had no reason to suspect there was any human being.   The result was the wounding of plaintiff, an inevitable accident, and this instruction is error.   (6)   The court erred in giving Instruction B.   This instruction defines "negligence" and tells the jury that a person using or shooting firearms is required to exercise a high degree of care. This is not the law when applied to the facts in this case, but only where a person knows or has reasonable grounds for believing that there are persons in the vicinity, liable to be injured by the use of such firearms.

*Chas. S. Greenwood, Pross T. Cross, Paul D. Kitt* and *Miles Elliott* for respondent.

(1) When plaintiff proved his injury, caused by being shot with a gun in the hands of defendant, he made his case; and defendant must show that he was not chargeable with negligence as an exoneration; or that it was accidental and not intentional, although negligent, by way of mitigation. Morgan v. Mulhall, 214 Mo. 460; Conway v. Reed, 66 Mo. 355; Morgan v. Cox, 22 Mo. 373. (a) Proof of a negligent or careless shooting will sustain an allegation of an unlawful and wrongful shooting. Conway v. Reed, 66 Mo. 346; O'Brien v. Loomis, 43 Mo. App. 35; Gibeline v. Smith, 106 Mo. App. 550; Orschein v. Scott, 90 Mo. App. 366. (2) A person is negligent as a matter of law in firing at an object concealed or partially concealed without taking time to discover what it is, which results in his hitting another person. Rudd v. Byrnes, 156 Cal. 636. (3) As firearms are extraordinarily dangerous, a person who handles such a weapon is bound to use extraordinary care to prevent injury to others, and is held to a strict accountability for a want of such care. 12 Am & Eng. Enc. Law (2 Ed.) 518; Bahel v. Manning, 112 Mich. 24, 67 Am. St. 381; Judd v. Ballard, 66 Vt. 668; Moebus v. Becker, 46 N. J. L. 41; Amear v. Swartz, 46 Okla. 98; Haines v. Kreeger, 25 Pa. Dist. 62; Hawksley v. Peace, 38 R. I. 544; Harrison v. Allen, 179 Ill. App. 520; Harper v. Holcomb, 146 Wis. 183; Welch v. Durand, 36 Conn. 182; Hawkins v. Watkins, 77 Hun. 360; 4 L. R. A. (N. S.) 119, note; Manning v. Jones, 95 Ark. 359; 11 R. C. L. sec. 44, p. 689; Wright v. Clark, 50 Vt. 130. (a) In the care and custody of firearms the utmost or highest degree of care must be used, to the end that harm may not come to others, since the degree of care required of one having possession and control of a dangerous article is commensurate with its dangerous character. Brittingham v. Stadiem, 151 N. C. 229. (4) It is only injuries from

unavoidable accidents that are not actionable. Wright
v. Clark, 50 Vt. 130, 28 Am. Rep. 496. (5) If the in-
jured person had no actual knowledge of the danger
that threatened him, and if in the exercise of ordinary
care under the circumstances he would not have appre-
hended such danger in time to avoid the consequences
of defendant's negligence, he cannot be charged with
contributory negligence. 7 Am. & Eng. Ency. Law (2
Ed.) 391, note 2; Langan v. Railway, 72 Mo. 398; 20
R. C. L. sec. 93, p. 107; O'Connor v. Railway, 94 Mo. 150;
Crawford v. Stock Yards Co., 215 Mo. 414; 29 Cyc. 514,
note 98, and page 515, note 2 and 3, and page 520, note
36; Kimberlin v. Telephone Co., 206 S. W. 433; 8 Thomp-
son on Negligence (White) sec. 40, p. 40. (6) An ac-
cident is such an unavoidable casualty as occurs with-
out anybody being to blame for it, that is, without any-
body being guilty of negligence in doing or permitting
to be done or in omitting to do the particular thing that
caused such casualty. Briscoe v. Railway, 222 Mo. 116;
Zeis v. Brewing Assn., 205 Mo. 648. (7) Appellant
tried the case below on the sole theory that the question
and issue was one of negligence or no negligence of de-
fendant; that defendant's liability depended on the ques-
tion of whether or not he was negligent. Appellant can-
not now change his theory and try this case on a theory
different from that tried below. Appellant now, for the
first time, injects into this case the theory that plaintiff
was a trespasser and on that account defendant owed
him no duty, and defendant was not liable for ordinary
negligence; appellant seeks to try this case on a differ-
ent theory than presented below. (a) The theory of
the trial in the trial court cannot be changed on appeal;
the case must be tried on appeal on the same theory as
in the trial court. Taylor & Sons v. Railway Co., 213 Mo.
715; Glaser v. Rothschild, 106 Mo. App. 418; St. Louis
v. Contracting Co., 210 Mo. 491, 502; Nickel v. Rail-
way Co., 135 Mo. App. 661, 671; Gordon v. Park, 202
Mo. 236, 248; Hof v. Transit Co., 213 Mo. 445, 470; Riggs

v. Railway Co., 216 Mo. 304, 318. (b) The appellate court will not pronounce on the soundness of a theory of a case when both parties coincide in putting it forward as one to be followed on the trial of the case. Hume v. Hale, 146 Mo. App. 659. (c) The appellate court will dispose of the case on the theory on which it was tried in the court below. Manzke v. Goldberg, 149 Mo. App. 12. (d) A point not raised in the trial court will not be considered on appeal. Ice Co. v. Kuhlman, 238 Mo. 685; Howell v. Jackson Co., 262 Mo. 414; Kirksville v. Ferguson, 262 Mo. 670; In re Purl's Estate, 147 Mo. App. 117.

RAGLAND, C.—By this action plaintiff seeks to recover damages for personal injuries sustained from the discharge of a fire arm in the hands of one Lewis Marlatt. The suit was instituted against the latter in the Circuit Court for Caldwell County, September 20, 1917. Subsequently, pursuant to written agreement of the parties, the venue was ordered changed and the cause was transferred to the Circuit Court for Livingston County. A trial in that court in January, 1919, resulted in a judgment for plaintiff in the sum of $4500. In due course defendant prosecuted an appeal to the Kansas City Court of Appeals. That court in an opinion concurred in by two of the judges held that the judgment of the trial court should be reversed and the cause remanded. The third member of the court was of the opinion that the decision was contrary to "the rule of decision, as to what is necessary to be shown in defense or exoneration from liability for the discharge of fire arms, as announced by the Supreme Court," in certain cases which were cited. The cause was accordingly certified here. Since the transfer of the case the death of the original defendant has occurred, and the cause has been revived in the name of his administrators.

The events giving rise to this controversy occurred August 23, 1916, on the farm of Lewis Marlatt, the

original defendant. Marlatt was seventy years of age and a little hard of hearing. On the afternoon of that day he had been fishing in some of the streams on or near his premises. He had with him a single-barrel breech-loading shot gun. Foxes had been catching his chickens, and when he started home from the fishing grounds he concluded to go through a certain bottom on his farm, thinking he might get a shot at one of the marauders of his poultry yard. On his way he came across two young men, Whitehead and Franklin, who were engaged in cutting brush for him. Presently all three of them sat down on the ground and engaged in conversation. Just east of them there was a corn field of some four or five acres. The corn had been drilled, the rows running north and south. Between them and the corn there was a barbed-wire fence, consisting of three wires tacked on posts and trees; they were from fifteen to twenty feet from the fence, and the fence was about the same distance from the first row of corn. Whitehead and Franklin were about fifteen feet apart, and Marlatt was between them; Whitehead was on the north, and all three sat facing the west with their backs toward the fence and corn field. There were some scattered trees in their immediate vicinity, and between them and the fence and alongside and adjacent to the fence —perhaps on both sides—there was buckbush from three to four feet high. The corn, according to various estimates, was from four to six feet high; and along the edge of the field near the fence fox tail grass had grown up to a height of from twelve to eighteen inches, and was then in full head.

Plaintiff was a boy sixteen years old who lived with his mother and an older brother on a neighboring farm. Whitehead and Franklin were acquaintances of his; he knew where they were cutting brush on Marlatt's farm; and on the afternoon heretofore referred to he left home to go to where they were at work for the purpose of paying them a visit. He came from the east, and his

route led him through the corn field just described. He had on blue overalls and a blue-and-white striped jacket and was wearing a "hickory" hat. The jacket and over-alls were new; the hat he had been wearing since the middle of the summer. During his progress and before he emerged from the corn he reached a point where he was almost directly east of the place where Marlatt, Whitehead and Franklin were sitting talking, and within from 75 to 100 feet of them. With respect to what then occurred there is some conflict in the evidence. Plain-tiff's version will be given first.

When plaintiff got to the edge of the corn field he heard some boys talking in the adjoining pasture; he recognized the voice of Franklin; he could not see the persons who were talking, because they were sitting behind some bushes, but he saw Franklin's cap. He stopped and listened, but could not understand what they were saying. He then stooped over, got a clod and threw it in their direction to attract their attention. He threw a second clod, and still failing to attract their notice, as he supposed, stooped over to pick up another clod. Just as he started to rise up he saw Marlatt with a gun, and Marlatt shot before he had time to halloo to him. On cross-examination plaintiff said that he was two or three rows from the edge of the corn field when he threw the clods; that he was within speaking distance of the parties, but did not say a word to them; that in throwing the clods it was not his purpose to scare them or play a practical joke on them,—he just wanted to attract their attention in that way; that he could not see them while they were sitting on the ground behind the bushes, but there was nothing to prevent their see-ing him when they got up; that his body was below the tops of the corn when he was stooping over to get the clods; and that he was shot as he started to straighten up after getting the third clod. The main body of the charge of shot struck him on the right side of the head and face. He was severely injured and rendered prac-

tically blind.   At the time of the trial he was six feet tall; his height at the time he was shot was something less than that, he was not able to state how much.

Marlatt testified:

"We sat down there and were talking, and pretty soon Whitehead said, 'What is that?' and I didn't hear anything—I am a little hard of hearing—and he jumped up and said, 'It is a fox; come here;' and I went and he said, 'It is a fox; shoot,' and I thought it was a fox and I shot Mr. McLaughlin.

"Q. Did you see Mr. McLaughlin at the time? A. No, sir.

"Q. Did you know he was there? A. No, sir.

"Q. Did you know any human being was there? A. No, sir; no one but those two boys and myself.

"Q. Tell the jury when you looked when he suggested this to you, what you saw? A. The grass was about eighteen inches high and it was shaking; the ground was a little damp and I grew a little fox tail and grass, and the corn was a little thin there, and Whitehead said, 'It is a fox; shoot.' and I supposed it was when I saw the grass shaking, and I shot. . . . .

"Q. You say this fox tail grass was growing in the corn? A. Yes, sir; it was low down.

"Q. How far was the corn from the fence? A. Three or four or five rows.

"Q. You could see the fox tail in the corn three or four or five rows? A. Yes, sir; the corn was thin.

"Q. You could see the fox tail there? A. Yes, sir.

"Q. You could see the fox tail grass in the corn three or four or five rows and it was moving? A. Yes, sir; something like that.

"Q. Did you look in any other direction than this fox tail when you shot; did you look up above the fox tail grass any? A. No, sir; I don't think I did.

"Q. If Corwin McLaughlin was standing up or stooped over with his hand to the ground—He was about six feet tall at that time? A. Something like that, I guess.

"Q. Then his body would have been above the fox tail grass? A. He was neither standing up nor hunkered down, he was lying down.

"Q. What makes you say that? A. Because I couldn't see him in the grass.

"Q. Are you sure he was lying down; the reason you say that was because you didn't see him? A. Well, I know he was not standing up or I could have seen him.

"Q. If he had been standing up you could have seen him? A. Yes, sir. . . . .

"Q. What did Whitehead say? A. He said that he heard something, and got up and walked towards the fence and he said it was a fox.

"Q. He got up before you shot? A. Yes, sir; Whitehead did.

"Q. He then said it was a fox? A. Yes, sir.

"Q. Might he have said, 'It must be a fox?' A. He might have, I don't know about that.

"Q. He might have said, 'It must be a fox' instead of 'It is a fox'? A. I couldn't say which way he said it.

"Q. In any event, without stopping to investigate what it was any more than what this young man said, without stopping to ascertain at what you were shooting, you deliberately pointed your gun in the corn field and shot? A. Yes, sir.

"Q. That is right, is it? A. Yes, sir. . . . The grass was shaking, and the boy said it was a fox, and by the grass shaking and him saying that, I supposed it was a fox; I saw the grass moving and did not see the boy."

The testimony of the plaintiff was corroborated in part by that of Whitehead; Franklin's testimony tended to support that of Marlatt. One of defendant's witnesses testified that plaintiff in describing the occurrence to him, two or three months after it happened, said that "he got up pretty close to them and laid down in the grass, . . . and made a little fuss to scare the boys."

When the gun was discharged plaintiff cried out,

"I am shot," and Marlatt exclaimed, "Oh, I have shot a man." Until plaintiff's outcry his presence was unknown to any of the other three. No unfriendly feeling existed between Marlatt and plaintiff.

The petition alleged "that on or about the 23rd day of August, 1916, defendant, in the County of Caldwell, and State of Missouri, unlawfully and wrongfully shot the plaintiff with a shotgun loaded with gunpowder and leaden shot, which said shot gun the defendant then and there held in his hands."

The answer denied that defendant unlawfully and wrongfully shot plaintiff, but averred "that injury to plaintiff, if any, was an accident, without malice, unintentional and without any knowledge of the plaintiff's presence." It also charged that plaintiff was guilty of contributory negligence, "in that the plaintiff, for the purpose of playing a practical joke upon the defendant, had entered the cornfield without the knowledge of this defendant and secreted himself in the tall grass so completely that he could not be seen, and did wave and wiggle the grass for the purpose of making this defendant believe, or those with him believe, that it was a fox in the grass."

For the plaintiff the jury were instructed that if they found that defendant negligently shot plaintiff with a shot gun loaded with gunpowder and leaden shot, and that plaintiff was injured thereby, they should return a verdict in his favor. They were further instructed "that a person using or shooting firearms is required to exercise the high degree of care which an ordinarily careful and prudent person would have exercised when using or shooting a firearm, under the same or similar circumstances, and that a failure to do so is negligence."

At the plaintiff's instance the court gave the following additional instructions:

"4. You are instructed that if defendant intentionally and on purpose shot his gun at any object in defendant's corn field, which turned out to be the plain-

tiff, then, even though defendant did not know he was shooting at a person, but thought he was shooting at a fox, the shooting of plaintiff by defendant was not an accident as understood and known in law, and defendant cannot escape liability for damages for plaintiff's injuries on the ground that the shooting of plaintiff was an accident.

"6.  You are instructed that the fact that plaintiff was on defendant's farm without defendant's knowledge or consent at the time the defendant shot at plaintiff, did not give defendant any right to shoot plaintiff, nor is that fact in itself any excuse therein.

"16.  You are instructed that the fact that some one with defendant told him to shoot, that plaintiff was a fox, would not of itself relieve defendant from liability for damages to plaintiff; defendant cannot escape liability for damages to plaintiff on information coming to him from another that plaintiff was a fox."

Defendant asked and the court refused a series of instructions, differently phrased, but all to the effect that the jury must return a verdict in his favor, unless they found that he intentionally shot plaintiff.

I.  Appellants contend that it was error to submit the cause to the jury on the theory of negligence for two reasons: first, because the petition charged an intentional shooting; and, second, because the evidence did not show negligence on the part of defendant. They also insist that the giving of each of the instructions "4," "6" and "16," was error upon any theory. They further complain of the refusal of the trial court to give certain instructions asked by defendant touching the issue of contributory negligence tendered by the answer.

Assault and Battery or Negligence: Pleading.

Respondent insists here, as he did below, that his action is for trespass; that in analogy to common law actions for trespass to the person it was only necessary

for him to allege and prove that he had been struck and injured by the discharge of a shot gun in the hands of defendant; and that it then devolved upon defendant to show that the injury was unavoidable—that it was neither intentionally nor negligently inflicted. This position seems to have support in the holding in Conway v. Reed, 66 Mo. 346.

"The modern doctrine places the liability of one who injures another through the negligent discharge of a fire-arm on the footing of *negligence,* and not on the footing of trespass,—though it may be doubted whether there is much difference in the grounds of liability." [1 Thompson on Negligence, sec. 780; 2 Cooley on Torts, 1232; Sutton v. Bonnett, 114 Ind. 243; Glueck v. Scheld, 125 Cal. 288; Winans v. Randolph, 169 Pa. St. 606; Cleghorn v. Thompson, 62 Kan. 727; Magar v. Hammond, 54 App. Div. (N. Y.) 532.] Generally speaking one who unintentionally inflicts personal injury upon another will not be liable as for a trespass, if he exercised the prudent care and diligence demanded by the circumstances. [Brown v. Kendall, 6 Cush. 292; Castle v. Duryee, 4 Abb. App. 327.] Nor is the rule any different with respect to injuries resulting from the handling or use of fire-arms. In the early cases involving actions in trespass for such injuries, it is said that defendant in order to exonerate himself must show that the injury was inevitable, and he utterly without fault. In its final analysis this language means simply that it is incumbent upon defendant in such actions, in order to relieve himself of liability, to show that he neither wilfully nor negligently inflicted the injury.

At common law, "in declarations in trespass, which lies only for wrongs immediate and committed with force, the injury is stated, without any inducement of the defendant's motive and intention, or of the circumstances under which the injury is committed." [1 Chitty's Plead. 188.] And it seems that an action for trespass for assault and battery was the proper *form of*

*action* for direct injuries negligently inflicted, as well as for those that were intentional and malicious. [Weaver v. Ward, Hob. 134.] But whatever the rule may have been under the old procedure, the Code requires that the petition shall contain "a plain and concise statement of the facts constituting the cause of action." Where one person is injured by the discharge of a fire-arm in the hands of another, he may have an action for assault and battery, if the shooting was intentional; or he may have an action for negligent injury, if the shooting was unintentional and the result of negligence. But the cause of action in the one case is different from that in the other, and both cannot arise on the same state of facts. It is said that a right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant, and the facts which establish the existence of that right and that delict constitute the cause of action. [Pavelka v. St. Albert Society, 82 Conn. 146.] In an action for personal injuries intentionally inflicted with a fire-arm, and in one for such an injury unintentionally but negligently inflicted, the plaintiff seeks a recovery for an invasion of the same primary right; but the defendant's delect in the one case is different from that in the other. As to that different elements of proof are required in the two actions, and the consequences to defendant, as measured by the recoverable damages, are different. Allegations of facts constituting a cause of action for personal injury wilfully inflicted will not, therefore, be supported by proof of an injury negligently committed. [Heizer v. Mfg. Co., 110 Mo. 605, 617; Bindbeutal v. Railway, 43 Mo. App. 463, 470; Birmingham Mineral Ry. Co. v. Jacobs, 92 Ala. 187.]

In the instant case, the petition, while it does not expressly allege an assault, can only be construed as charging an intentional shooting of plaintiff by defendant. And the pleadings as a whole exhibit the queer anomaly of contributory negligence being pleaded as a

McLaughlin v. Marlatt.

defense to an action for assault and battery. Such con-·
fusion can be avoided by requiring plaintiff in actions
of this character to state the facts constituting the cause
of action upon which he relies.    Conway v. Reed, 66
Mo. 346, supra, should no longer be followed.    While
a number of our cases. hold that where negligence is
clearly charged in the petition, the use of the word ''wil-
fully'' as a mere rhetorical flourish will not effect a
change of the cause of action, Conway v. Reed is the only
one that goes to the extent of holding that a charge of
assault and battery is sustained by proof of an injury
negligently inflicted.

Where a plaintiff sues to recover for a personal in-
jury suffered from the discharge of a fire-arm in the
hands of another, the burden of proof is of course upon
him to establish the cause of action alleged, whether it
be for assault and battery, or based on negligence.    It
is no doubt true that the accidental discharge of a gun in
the hands of one person, whereby damage is inflicted
upon another would under some circumstances be pre-
sumptive evidence of negligence, sufficient to take the
question to the jury.    Under other circumstances no such
presumption would arise, as when, for example, the
person using or handling the gun would have no reason
to anticipate the presence of the person injured or that
of any other human being within the radius of its dis-
charge.    The facts of each particular case must there-
fore determine the character and quantum of evidence
necessary to make a prima-facie case for plaintiff when
his action is bottomed on negligence.

II.    It is next contended that the evidence was in-
sufficient to take the question of Marlatt's negligence to
the jury.    It is claimed that plaintiff was a trespasser,
that consequently Marlatt owed him no duty except not

Negligence.

to wantonly or wilfully injure him, and that he
could not have done because he was wholly
unaware of plaintiff's presence.    But plaintiff was not

technically a trespasser. There exists among farmer folks, as among others, an implied invitation to visit each other, and nothing appearing to the contrary plaintiff had an implied license to come upon Marlatt's land for the purpose of visiting his friends who were in Marlatt's employ. Marlatt on the other hand had the right to fire his gun any where and as often as he pleased on his own land provided he exercised ordinary care not to endanger the lives of others. Owing to the dangers attendant upon the use of fire-arms, the ordinary care he was bound to exercise was a very high degree of care.

When he fired he did not know that plaintiff was any where on his farm, and he had no particular reason for anticipating his presence or that of any other human being within the direction and range of his gun. Notwithstanding, it cannot be declared as a matter of law that he was not negligent, if he closed his eyes and fired blindly without taking the slightest precaution with respect to who or what might be within range of his gun. According to plaintiff's evidence, when Marlatt shot, the plaintiff was not to exceed ninety feet away, just in the edge of the corn where it was thin and still green; he was dressed in a blue and white jacket and was in the act of straightening up after bending over to pick up a clod. He was plainly visible from where Marlatt stood, and, had the latter looked attentively but for an instant in the direction in which he was shooting before he fired, he could not have helped seeing plaintiff. He himself said, that, without stopping to investigate or ascertain at what he was shooting, he pointed his gun toward the corn field and fired. It was clearly for the jury to say whether under all the circumstances he exercised ordinary care in so doing.

III. There was evidence which entitled defendant to have the question of plaintiff's contributory negligence submitted to the jury under proper instructions. It may be that plaintiff did not know that Marlatt was present,

or that any of the party had a gun, or that any of them were hunting foxes; still, if, after throwing **Contributory Negligence.** clods to attract their attention, he laid down in the tall grass so as to conceal himself and made the grass wave or wiggle in such a way as to induce the belief that a fox or other wild animal was hiding therein, should he not have anticipated that even if neither of the boys had a gun a rock or other missile would be thrown at him? It was for the jury to say whether a boy of his age and experience would, in the exercise of ordinary care, have apprehended that danger was likely to flow from such conduct. The trouble with the instructions offered by defendant in connection with this phase of the case is that they declared the acts and conduct just referred to constituted negligence. The question is one of mixed law and fact. It was not only for the jury to say whether the facts existed, but whether they convicted plaintiff of contributory negligence. It was not error to refuse the instructions asked.

IV. The term "accident" is not defined in plaintiff's Instruction 4, but the jury must have understood from the instruction that if defendant *intentionally* shot at an object which he thought was a fox but which was plaintiff, then he could not escape liability on the **Instructions.** ground that the injury inflicted was not the result of any negligence or misconduct on his part. In other words, it made the defendant's *intention to shoot* the test of liability, and not his care or lack of care in the premises. The giving of the instruction was error.

Instruction 6· was misleading and prejudicial. Neither defendant nor any one for him was claiming that defendant had a right to shoot plaintiff simply because the former was on the latter's farm without his knowledge or consent. The instruction was also misleading in telling the jury that the fact that plaintiff was on defendant's farm without the latter's knowledge or con-

sent was not "in itself" an excuse for shooting plaintiff, without qualifying it by further telling them that defendant's lack of knowledge of plaintiff's presence was a circumstance to be taken into consideration, with all the other facts and circumstances in the case, in determining whether defendant in shooting as he did was in the exercise of ordinary care.

While it is true "that the fact that some one with defendant told him to shoot, that plaintiff was a fox, would not of itself relieve defendant from liability," the fact that some one told defendant to shoot, that the object concealed in the grass and causing it to wiggle was a fox, was a circumstance that the jury might well take into consideration with all the other facts in proof in passing on the question of defendant's negligence. But its evidentiary value was minimized if not entirely destroyed by the phrasing of Instruction 16. The instruction also contains the unwarranted assumption that defendant was trying to escape liability on "the mere fact that he may have relied on information coming to him from another that plaintiff was a fox."

Before another trial the plaintiff should be given leave to amend his petition, if so desired.

For the errors noted the judgment is reversed and the cause remanded. *Brown C.,* not sitting; *Small, C.,* absent.

PER CURIAM:—The foregoing opinion by RAGLAND, C., is hereby adopted as the opinion of the court. All of the judges concur.