Belle WOLFSON, Respondent,

v.

Leo CHELIST, Executor of the Estate of
Bernice Chelist, Deceased, Appellant.
No. 44946.

Supreme Court of Missouri.

Division No. 1.

Dec. 12, 1955.

J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellant.

Maurice Mushlin, James W. Jeans, Hullverson & Richardson, St. Louis, for respondent.

VAN OSDOL, Commissioner.

In this action, plaintiff Belle Wolfson had verdict and judgment for $2,000 for injury sustained as the result of a fall on the porch steps of the residence owned and occupied by her sister, Bernice Chelist, now deceased. When plaintiff was injured, she was a social guest at the Chelist home. There was evidence that plaintiff, in walking out through a rear or side door of the house, had stepped and slipped on fragments of meat or grease which remained on the concrete porch floor after the cat had been fed there the night before.

The action was originally brought against Leo Chelist, husband of Bernice. Subsequently by amended petition, Bernice was joined as a party-defendant; and upon the death of Bernice, prior to trial, Leo Chelist, executor, was substituted as party-defendant. At the time of trial, plaintiff dismissed as to the individual defendant Leo Chelist. Defendant Leo Chelist, executor, appealed from the adverse judgment to the St. Louis Court of Appeals. That court reversed by majority opinion. Wolfson v. Chelist, Mo.App., 278 S.W.2d 39. The majority of the members of the Court of Appeals were of the opinion that plaintiff was a "licensee" in her visit to the Chelist home. Because of a dissent and the certification by the dissenting judge that he deemed the majority opinion was in conflict with this court's previous decision in Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A., N.S., 1045, the cause was transferred to this court. It is this court's duty to determine the cause the same as on original appeal. Const. Art. V, § 10, V.A.M.S.

Having examined the record and having studied the briefs of the parties filed in the Court of Appeals and the brief

of the party-plaintiff (respondent) filed herein, we can find no fault in the reasoning and result of the majority opinion and decision of the Court of Appeals in its disposition of the contentions of the parties relating to the construction of Section 492.200, RSMo 1949, V.A.M.S., as to its effect with reference to the timeliness of the notice given for taking the deposition of Bernice. And we are of the opinion the taking of the deposition of the then adverse party, defendant Bernice, who died prior to the trial of the cause, rendered plaintiff a competent witness as to matters testified to by Bernice in her deposition. Our examination of the record has also disclosed that the statement of facts in the opinion of the Court of Appeals is adequate and accurate, and reference may be made to that opinion for the facts of this case. Actually, we can see no error in the reasoning and result reached in the majority opinion of the Court of Appeals in the review of the entire cause. It seems to be the almost universal rule in Anglo-American jurisdictions that a social guest in a home is not an invitee in a legal sense, but is, in law, a licensee. See the cases collated in Annotations, 12 A.L.R. 987, 92 A.L.R. 1005, and 25 A.L.R.2d 598. See also 65 C.J.S., Negligence, §§ 32e, 43(4)g, pp. 489, 519; 38 Am.Jur., Negligence, § 117, p. 778; Prosser, The Law of Torts, 2nd Ed., § 77, at pages 447–448.

Plaintiff-respondent in her brief filed herein initially strikes at the presently recognized legal classes—trespasser, licensee and invitee—of entrants upon lands occupied or possessed by another. It is asserted that the conduct of any occupier of land toward any entrant thereon should be examined under the general principles of negligence to determine whether the occupier acted reasonably under all of the circumstances. Reasonableness, it is said, would depend principally upon the character and magnitude of the risk of harm, its foreseeability, and the means and opportunity available to avoid it. Under this test, says plaintiff, her claim would be one for the jury to decide. Plaintiff does complain generally of the existing rule applicable to occupier and trespasser, but she more particularly insists that the legal distinction between licensee and invitee should be abolished because the "purpose" of a visit with consent or by invitation is not a real, substantial, logical or just basis for distinction. Moreover, plaintiff asserts that, if the distinction between licensee and invitee be preserved, the existing law of Missouri should be adhered to. In this connection, Glaser v. Rothschild, supra, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045; McLaughlin v. Marlatt, 296 Mo. 656, 246 S.W. 548, and Mann v. Pulliam, 344 Mo. 543, 127 S.W.2d 426, are cited as authorities in Missouri for treating the legal status of a social guest as that of invitee, with consequential appropriate duty imposed upon the occupier to protect an invitee from harm.

At the very outset of the Glaser opinion, the author got to the root of the thing. He asked, "Do the facts raise a duty, a breach of which is shown?" A general rule was stated that the owner or occupier of premises lies under no duty to protect those from injury who go upon the premises as volunteers or merely with his express or tacit permission from motives of curiosity or private convenience in no way connected with business or other relations with the owner or occupier. Such a bare licensee, barring wantonness or some form of intentional wrong or active negligence by the owner or occupier, takes the premises as he finds them. "His fix may be likened unto that of one who, buying lands, buys stones * * *." But "the situation with reference to liability radically changes when the owner *invites the use of his premises for purposes connected with his own benefit, pleasure and convenience.*" (Our italics.) A licensee who goes upon the premises of another by that other's invitation and for that other's purposes is no longer a bare licensee. He becomes an invitee and the duty to take ordinary care to prevent his injury is at once raised and for the breach of that duty an action lies.

Therefore, in legal contemplation the duty and the precautions to be taken in the fulfillment of the duty arise out of the legal relationship between the one (trespasser, licensee or invitee) who goes upon the land

and the occupier or possessor thereof. Porchey v. Kelling, 353 Mo. 1034, 185 S.W. 2d 820; Glaser v. Rothschild, supra; Indermaur v. Dames, (1866) Law Rep. 1 C.P. 274, 35 L.J.C.P. 184, affirmed (1867) Law Rep. 2 C.P. 311, 36 L.J.C.P. 181.

The principal criticisms leveled at this classification are assertions of its antiquation and rigidity, and the difficulty in a given case of putting a plaintiff in a particular class—trespasser, licensee or invitee. (It is also said the decision in the basic English case [Southcote v. Stanley, 1 H. & N. 249, 156 Eng.Rep. 1195] treating with the duty of a host to a social guest was reasoned from premises now exploded.) Counsel also speaks of property interests as if those interests are opposed to human interests. Consequently, it is urged that all entrants coming upon an occupier's premises by invitation or permission, express or implied, should be afforded the protection of one uniform duty of the occupier to exercise due care in the circumstances.

We are not inclined to agree that the language of the Glaser opinion, which language we have quoted and italicized supra, is substance for the belief that the author of the opinion and this court had in mind an entrant's visit with the "purpose" of the enjoyment of the social relationship of host and guest. Nothing in the language of the whole opinion so indicates. And the opinion did not treat with such a factual situation. McLaughlin v. Marlatt, supra, does not support the position of plaintiff herein. In that case, upon appeal, defendant was contending plaintiff was a trespasser. In addressing itself to that contention, this court observed that plaintiff had an implied invitation to visit his neighbors, including defendant Marlatt and his employees. It was said that plaintiff had an "implied license" to come upon defendant Marlatt's land. Apparently plaintiff was making a *social* visit to friends who were in defendant Marlatt's employ. There was evidence of defendant's active negligence, if not wanton conduct, in shooting plaintiff. But it is true plaintiff in the McLaughlin case was not contending he was an invitee. In Mann v. Pulliam, supra, this court decided

the case on the issue of "foreseeability" applied as a test in determining negligence. It was deemed unnecessary to there consider and this court did not there consider the questions presented here.

Counsel for plaintiff has proposed an outline for us to adopt in writing our opinion. In Paragraph (1) of the outline, it is suggested that we write, "The attempt to classify visitors to land as trespassers, licensees or invitees should be abandoned in favor of a rule requiring the occupier of premises to use due care to avoid their injury, 'due care' to be determined by the jury and to depend upon (a) the invitation or permission, (b) whether express or implied, (c) the purpose of the visit, (d) the benefit, economic or otherwise, flowing to the visitor and occupier, (e) the nature of the premises, (f) the activities thereon conducted, (g) the nature of the defect or danger, whether unusual, 'trap,' extra-hazardous or what-not, (h) the foreseeability of harm, (i) the ease of correction or warning, (j) the notice or knowledge, express or implied, of the occupier and visitor, (k) relative 'positions' of the parties, e. g., their youth or infirmity, etc., and (1) the number of persons exposed to the risk of injury, * * *."

Now counsel does not specifically point out how the adoption of these suggestions would make the result of cases involving injuries to an entrant more just in any case, the situation, the human aspirations, and the althruistic, social and economic hopes, duties and responsibilities of *both* parties considered. And, particularly counsel does not specifically point out how or why the suggested rule would be more just in the instant case, the situation of both of the parties considered. What is really said is that an entrant with consent or by invitation, with whatever purpose the visit or the terms of the invitation or benefit bestowed, comes on the land lawfully and should therefore reasonably expect the occupier thereof should have exercised reasonable care in the circumstances to make the premises reasonably safe for the visit. Having examined the Paragraph (1), quoted supra, we have noticed that one of the factors counsel thinks should be considered

by the jury in determining the issue of due care is "(c) *the purpose of the visit,*" and another is "(d) *the benefit, economic or otherwise,* flowing to the visitor and occupier." Now the factors counsel has suggested should be taken into account by a jury are those which have been weighed and considered by the courts in determining the status of an entrant, or which the courts have recognized (by ingrafting exceptions) in circumstances where human justice calls for an exception. See generally Prosser, The Law of Torts, 2nd Ed., §§ 76–78, pp. 432–452.

Of course a social guest is an invitee to a host's home in the sense that he has been asked to share for a time the hospitality of the home and so become in a way quite as a member of the host's family for a while, that is, he is an invitee in the ordinary social sense. The word "invitation" here has been a source of difficulty because of an apparent incongruity in terminology inasmuch as the "invited" social guest is held to be not an invitee but a licensee. We have here an invitee who is not an invitee. The incongruity, only apparent, disappears, however, when it is understood it has been thought there must be something more than the mere fact of an invitation to give the entrant upon another's property the status of an invitee in a legal sense. Having an invitation, we are concerned with what kind of an invitation it is. What are its terms? To what place are we invited? For what purpose are we asked to come there? In our case the invitation was a social one. The guest was invited to a private home. The invitation was not tendered with any material benefit motive. In such a case it would seem a guest should not expect that precautions have been taken for his safety that should be taken by the inviter-proprietor of a store to protect the invitee-customer from harm. The invitation was not extended to the public generally or to some undefined portion of the public from which invitation, in the shown circumstances of a case, entrants might reasonably expect precautions have been taken, in the exercise of ordinary care, to protect them from danger. The courts have reasoned that when the social guest visits his host's home, he should understand that he is to be placed on the same footing as one of the family, and must take the premises as the occupier uses them, without any precautions for his safety. Prosser, "Business Visitors and Invitees," 26 Minn.L.Rev. 573, at pages 602–604. The guest is in most or at least in many cases in approximately the same economic "bracket" as his host, and so the guest is generally, although admittedly not always, as able as the host to bear the loss resulting from the ordinary imperfections and inadvertences in the premises and menage. (But, of course, the social guest may expect and is entitled to the protection of the law, by way of exceptions, afforded to a licensee.) It seems to us there is, in the circumstance of the invitation and in the purpose of the social guest's visit to the host's home, solid and just foundation or reason for the rule that the guest should accept the premises as he finds them. That is, he should accept or assume the risks of the ordinary faults and omissions in the premises and in the management of the household, including, we think, the risk incident to a small residue of hamburger consisting of particles of substance or grease which the host or someone in his or her service neglected to mop up after the family cat had been fed the night before on the step of the stoop or floor of the porch at the rear or side door of the home.

Plaintiff has questioned that the reasons stated so many years ago by English judges in classifying entrants as trespassers, licensees and invitees (and in fixing the legal status of a social guest as that of a licensee) were valid when stated, or that the stated reasons have any present day validity or appeal. Here, plaintiff has cited articles written by authors learned in the law of torts. See McCleary, "The Liability of a Possessor of Land in Missouri to Persons Injured While on the Land," 1 Mo.L.Rev. 45; James, "Tort Liability of Occupiers of Land," 63 Yale L.J. 144 and 605. Another cited authority (and others) has written that today it would be appropriate to consider how far sanctity of landed property ought to be recognized as a legal value of

greater importance than the physical, safety of the community. Marsh, "The History and Comparative Law of Invitees, Licensees and Trespassers," 69 L.Q.R. 182, at page 184.

▮ Now at this point we say we have not considered the classification (trespasser, licensee and invitee) so inflexible as to preclude recovery where the facts merit an exception. In treating with cases where economic or social conditions create new and sound humanitarian bases for invoking a duty to take precautionary measures over and beyond those imposed upon an occupier in a particular occupier-entrant relationship, we think we have not and we trust we shall not too rigidly apply the law applicable to the entrant's legal status. As we said in the recent case of Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo.Sup., 246 S.W. 2d 742, we say again that the status of the injured party does not necessarily control under all circumstances. See now for examples, Ahnefeld v. Wabash R. Co., 212 Mo. 280, 111 S.W. 95; Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623; Boyer v. Guidicy Marble, Terrazzo & Tile Co., supra; Wells v. Henry W. Kuhs Realty Co., Mo. Sup., 269 S.W.2d 761.

As stated supra, plaintiff has alluded to and criticized the case of Southcote v. Stanley, supra, 1 H. & N. 249, 156 Eng.Rep. 1195, decided in 1856, the leading English case on the land occupier-host's duty to his social guest. In that case two members of the court likened the guest to a servant who undertakes to run all the ordinary risks of service, including those arising from the negligence of his fellow servants (Priestly v. Fowler, 3 M. & W. 1); one of these judges had said the "case of a shop is different, because a shop is open to the public; and there is a distinction between persons who come on business and those who come by invitation." Another member of the court spoke of a duty to exercise reasonable care, but in that connection spoke of spring-guns or mantraps, or of the essentiality of declaring upon an act of commission. That the Priestly-Fowler rule, utilized in the Southcote case as an analogy,

has been changed or restricted, or that the gift-chattel donee analogy in Gautret v. Egerton, (1867) Law Rep. 2 C.P. 371, 36 L.J.C.P. 191, may have been fallacious (Denning, L.J., in Hawkins v. Coulsdon and Purley U.D.C., [1954] 1 All E.R. 97, at pages 102–107) is in itself no reason for concluding it is unjust to the parties, entrant-guest *and* occupier-host, to put a social guest in the legal category of licensee. With respect to the Southcote v. Stanley case, however, we gratuitously point out that the invited social guest in accepting an invitation and in coming upon the host's premises is not motivated by any economic compulsion as a servant might be compelled by economic necessity to accept unsafe conditions in the master's service. Thus, although the oppressiveness of the Priestly-Fowler rule now has been in most cases erased, and the relation of master and servant is not now a valid analogy in host-social guest cases, it would seem the analogy was, nevertheless, not invalid when made, in view of the fact that the Priestly-Fowler rule obtained when Southcote v. Stanley was decided.

In England, in the Third Report of the Law Reform Committee, presented to the Parliament in 1954, the existing law recognizing a distinction between invitees and mere licensees was criticized. It was recommended that the law should be simplified by the abolition of the existing categories of invitees and licensees, and the substitution of one uniform duty of care owed by the occupier of premises to all persons coming upon them at his invitation or by his permission, express or implied. The committee, however, recognized the force of the argument that if the existing system, "however irrational it may be in theory, works well in practice, it had better be left alone, and we do not underrate the difficulties attending any attempt to codify this branch of the law." Law Reform Committee, Third Report ("Occupiers' Liability to Invitees, Licensees and Trespassers"), at page 33.

Plaintiff has called our attention to the fact that a learned authority on the law of torts has administered a self-reprimand be-

cause of his part in changing the terminology upon restating legal differentiation of relationships between possessors of land and persons entering thereon. See Prosser, "Business Visitors and Invitees," 26 Minn. L.Rev. 573, footnote at page 612; Restatement, Torts, § 329 et seq. If it be true that the Restatement of the Law of Torts is wrong in this respect, it is of no concern to us here other than to confirm our view that it is not always in the interest of justice to change or abandon the terminology long employed to express and define legal relationships and legal duties imposed.

In Scheibel v. Lipton, 156 Ohio St. 308, 102 N.E.2d 453, the Supreme Court of Ohio was not inclined to consider a social guest as a "licensee," as that term is used in decisions of Ohio courts, or as an "invitee," in the sense of a "business visitor." The Court resolved the difficulty in forcing social guests into any one of the "three molds" commonly recognized—trespasser, licensee, or invitee—by ceasing such effort, and by considering social guests as "social guests" and by referring to one owing the duty and obligation to the guest as the "host." Thus in Ohio it might be said a fourth category has been recognized; but, the Court, in delineating the duty on the part of the "host" to the "social guest," states a rule quite like that stated in some jurisdictions in defining the duty of occupant or possessor of land to a licensee.

While it may be there could be no real objection to treating a host-guest relation as sui generis, yet to us the Scheibel case and the stated arguments of plaintiff in her briefs demonstrate nothing really wrong in considering a social guest has the legal status of licensee. And we believe the duties and liabilities in occupier-entrant cases will be quite as justly if not more justly considered and with less confusion determined by generally continuing the existing classification of relationships of occupiers-entrants, and by generally continuing the use of terminology long employed by the profession and by the courts in advising and in determining what is right as between occupier-entrant adversaries, although we take no austere and unrelenting position on these matters.

The judgment should be reversed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.