WILFRED E. PETRY AND LIVINGSTON PETRY, PLAINT-
IFFS, v. FRANK HOPPING, DEFENDANT.

Argued June 7, 1922—Decided July 20, 1922.

1. A person who causes damage to another by failing to exercise reasonable foresight for harm in the doing of an otherwise reasonable act, is liable for such damage, and where the testimony as to the character or quality of the care exercised in a given case is in dispute, the question is one for the jury.

2. Plaintiff was in defendant's store when burglars entered. Defendant escaped to a rear room, where he entrenched himself with a loaded gun. The burglars being frightened away, plaintiff went into the rear room, and in the darkness was shot by the defendant. *Held,* in an action for damages sustained, that the question of whether defendant exercised more than ordinary care to prevent injuries to others and whether, as defendant insisted, the plaintiff was a trespasser in the rear room and was reckless in injecting himself, without warning, into the darkened room in the existing exigency, so as to contribute to his injury, were properly questions for the jury.

On rule to show cause.

Before Justices PARKER, BERGEN and MINTURN.

For the rule, *King & Vogt.*

*Contra, Charles A. Rathbun.*

The opinion of the court was delivered by

MINTURN, J. The defendant was the owner of a country store at the village of Hanover Neck, in Morris county. About half-past nine on the night of January 27th, 1921, the plaintiff, his cousin, Wilfred E. Petry, a young man about twenty years of age, formed one of a group of friends who sat in the accustomed manner about the stove conversing, when an automobile drew up and stopped at the store. Three men entered, and after purchasing cigars from the defendant, who stood behind a counter serving them, one of the trio suddenly shouted, "Hands up. You are covered." With that admonition, two of the burglars covered the plaintiff and the defendant's brother at the stove, while the third attempted to cover the defendant, but some delay, due to difficulty in drawing his revolver, enabled the defendant to drop behind the counter and eventually retreat to the kitchen, where he found a loaded gun, and, after throwing his money into an adjoining pantry, he blew out the light in the kitchen and passed to the adjoining storeroom, where he stood on guard with the gun.

While the defendant was thus entrenching himself the burglars, doubtless alarmed by his unexpected escape, took to flight, and when they retired, the plaintiff with the defendant's brother, Wallace, left the store; the plaintiff going back through the hallway opened the door leading into the darkened kitchen. Without any warning the defendant, stationed at the darkened storage room, opened fire upon plaintiff, as a result of which plaintiff received the discharge of the gun in his right arm. The wound thus received neces-

sitated the amputation of the arm; to recover damages for which physical loss, this suit was instituted by Wilfred and his father, the other plaintiff.

The trial at the Circuit resulted in a verdict for the plaintiff, and this rule is designed to present the legal inquiries which substantially comprehend the defence.

The fundamental inquiry presented is whether, under the circumstances, the defendant is guilty, by his unfortunate and mistaken deed, of the commission of any act which may be comprehended within the legal term negligence; for, manifestly, if it can be brought within the legal exceptions recognized as *vis major* or inevitable casualty, the defendant's act is not within the legal conception of an actionable tort.

To sustain his contention the industry of counsel has failed to extract one instance from the vast, interminable plethora of national and international case law which confronts us like an endless stream. We are driven, therefore, for answer, to the basic founts of legal inspiration upon which case law presumably is constructed, and from which it is presumed to derive its stability and vitality; sources which Blackstone defines as: "That ancient collection of unwritten maxims and customs which is called the common law, however compounded and from whatever fountain derived." *Bl.* 20.

Among those immemorial maxims and principles is one which imposes liability upon an actor, who causes damage to another by failing to exercise reasonable foresight for harm, in the doing of an otherwise reasonable act. *Sm. Neg.* 93; *Add.* 4; 1 *St.* 73.

We have applied that principle in this court and in the Court of Errors and Appeals as the basic determining test in the law of negligence in a variety of instances. *Beck* v. *Hines,* 95 *N. J. L.* 158; *Higgins* v. *Goercke Co.,* 91 *Id.* 464; affirmed, 92 *Id.* 424.

In the Beck case we declared that the rationale of the rule of liability is the reasonable exercise of the foresight for harm (*p.* 161), and we have held also that where the testimony as to the character or quality of the care exercised in a given case

is in dispute, the question is one for the jury. *Monroe* v. *Pennsylvania Railroad*, 85 *N. J. L.* 688.

The inquiry, therefore, upon which the solution of this case depends is whether, under all the circumstances, and in the environment in which the defendant was placed, he used due care and foresight for harm?

One writer declares that "persons are bound to use the very greatest care in the use of poisonous drugs or highly explosive instruments· or materials otherwise dangerous or destructive." *Sm.* 94. *Add.* 4, declares: "If the damage done is the immediate result of force, exercised by the defendant in a place where the probable and natural result of misdirected force, would be to cause injury to others, the defendant will be responsible for damage done, though it happens accidently or by misfortune, unless the force was used strictly in self-defence."

And, so, Lord Ellenborough: "If I put in motion a dangerous thing, as if I let loose a dangerous animal, and leave to hazard what may happen, and mischief comes to any person, I am answerable in an action of trespass." *Leame* v. *Bray*, 3 *East* 595.

So, a defendant was held liable for damages resulting to another by accident where defendant was shooting with bow and arrow at the butts. 21 *Hen.* 7, 28.

So, in a similar situation where defendant was exercising himself at arms with a rifle. *Weaver* v. *Ward*, *Hob.* 134.

So, in *Dickinson* v. *Watson, T. Jones* 205, where defendant innocently shot a passerby, the court held that "nothing short of unavoidable necessity" would excuse the act.

The same result was reached for the same reason in substantially a similar case. *Underwood* v. *Hewson*, 1 *Str.* 596.

So, in 1803, Mr. Justice Grose, in *Leame* v. *Bray*, 3 *East* 593, declared: "Looking into all the cases, from that of the year book down to the latest decision, I find the principle to be that if the injury be done by the act of the party himself at the time, or he be the immediate cause of it, though it happened by accident or misfortune, yet he is answerable."

Some of the modern cases bearing upon the subject and presenting a discussion under variant circumstances of the general principle of liability may be found collected under *Siefker* v. *Paysee* (*La.*), 4 *L. R. A.* (*N. S.*) 119; *Craddock* v. *Plummer* (*Mich.*), 14 *Id.* 675; *Rudd* v. *Burns* (*Cal.*), 28 *Id.* (*N. S.*) 134.

In the case of *Moebus* v. *Becker*, 46 *N. J. L.* 41, the suit arose out of an accidental discharge of a gun, while the parties were hunting, and this court, speaking by Mr. Justice Scudder, said: "The duty which a person, lawfully carrying firearms, owes to others is not different from that which is impressed on all who have control of any hurtful thing, except in the degree of care to be exercised. As firearms are more than ordinarily dangerous when loaded, those who handle them are bound to use more than ordinary care to prevent injuries to others."

Whether such care was exercised in this instance, and whether, as the defendant insists, the plaintiff was a trespasser in the kitchen, and was reckless in his conduct in injecting himself without warning into the darkened room, in the existing exigency, so as to contribute to his injury, were questions for the jury and were properly submitted to them by the learned trial court. *Moebus* v. *Becker, supra; Newark Passenger Railway* v. *Block*, 55 *N. J. L.* 605.

These considerations lead to the discharge of the rule to show cause.