KATHERINE WHITE and MARYLAND CASUALTY COMPANY, a Corporation, Appellants, v. JOHN BUNN.—145 S. W. (2d) 138.

Division Two, December 3, 1940.

*Grant Emerson, Ewing, Ewing & Ewing* and *Lynn M. Ewing* for appellants.

*Gibson & Teel* for respondent.

BOHLING, C.—This is an action for the alleged negligent shooting and death of Harry White, instituted by his widow Katherine White and Maryland Casualty Company, a corporation, an insurance carrier paying Mrs. White $5000 under a workmen's compensation policy. Verdict and judgment for John Bunn, defendant. Plaintiffs appeal.

The issues presented may be disposed of by rulings involving an intentional and negligent injury and the contributory negligence of White as an issue of fact.

Harry White was thirty-two years of age, healthy, with good eyesight and hearing. He was a salesman for the Southwest Liquor Company of Joplin, Missouri, where he resided. Defendant, a customer, had a place of business, sixteen feet, east and west, by thirty-two feet, north and south, on the north side of Highway No. 54 about fourteen miles west of Nevada, Missouri. The south wall had a door about the center and a window near its east end. Extending north along the east wall was merchandise shelving. Approximately four feet west of this shelving was a sixteen foot counter, about three feet wide and three feet high, the south end being flush with the south wall. The four foot passageway was open only at the north. Between the counter and the west wall were a table, some chairs and two oil barrels. North of the counter was a stove and defendant's cot.

Harry White called at Bunn's place January 12, 1937, about 3:00 P. M. or later. They were good friends. Thereafter Clark Cook, accompanied by others, came in. White, Bunn, and Cook were leaning against the counter. Cook had been hunting rabbits with a 22-caliber short barrel pistol and made some remarks about how good a gun it was and how loud it would shoot. There were eight or nine men or boys in Bunn's place, and someone asked Cook to hit a match lying on the floor. Cook did. Cook then put his gun in his car, and returned. Some of the men started playing cards. Twenty or thirty minutes later Louis Fritter came in. In the meantime Bunn had said to White: "Harry, just check up, see anything I need;" and White had gone behind the counter. Fritter and Cook started scuffling and cutting-up in fun, and Cook made a motion as though he had a gun. Bunn then said to Fritter: "Go get my big gun and show him how loud it will shoot." Fritter went behind the counter and brought back a 38-caliber gun and shot at the floor. Bunn said "I don't mean that one, Louis, I mean my gun." Bunn then procured his 45-caliber Colt hammer gun from the rear of the building and, returning to a point approximately eighteen inches north of

and three or four feet west of the counter, raised the gun to a position about opposite his right ear. He started to bring it down to shoot at the floor. When the gun was at a point about three feet above the floor it went off. The bullet struck the top of the counter, ricocheted and passed through White's head and out of the window. White fell back of the counter and died the next day without regaining consciousness. The bullet would have missed White by approximately six to eight feet had it not ricocheted. Bunn, not realizing White was hurt said: "Come on out, White, the shooting is over," Bunn testified that he saw White and everyone else in the building while he was raising the gun; that White was behind the counter at the south end, writing down orders; that "I don't know whether my thumb came off of the hammer or if I pulled the trigger." Three to five minutes elapsed between the Fritter and Bunn shots.

Plaintiffs' cause of action was based on negligence, the petition charging that the acts of Bunn "were negligent and reckless and in disregard of the safety" of deceased and others. Contributory negligence was an available defense, if established. McLaughlin v. Marlatt, 296 Mo. 656, 668 [I, III], 246 S. W. 548, 552 [1, 3, 4, 8]. The petition did not charge and the evidence did not establish that defendant acted with the intention of shooting any person or in realization to a substantial certainty that he would shoot any person. Defendant intended to shoot but intended no harm to deceased or any other. His conduct may have been negligent but did not give rise to a cause of action based on an intentional injury. The *ratio decidendi* of observations in cases relied upon by plaintiffs to restrict defendant's available defenses to justifiable or excusable injury are applicable to an intentional shooting and not to cases wherein the evidence establishes only a negligent shooting.

Morgan v. Cox (Banc, 1856), 22 Mo. 373, "was for the negligent shooting of the plaintiff's slave, and the only question was as to the fact of negligence." (374) The court disposed of the case upon grounds of a negligent shooting (376), and the subsequent observations there made and relied upon by plaintiffs were *dicta*.

Conway v. Reed (Banc, 1877), 65 Mo. 346, mentions an "unlawful and wrongful shooting" (347), "an intentional trespass" (355), and evidence by plaintiff establishing defendant's "carelessness and negligence." The opinion conforms to the reasoning of the *dictum* in Morgan v. Cox (351).

Dowell v. Guthrie (Banc, 1889), 99 Mo. 653, 661(2), 12 S. W. 900, 902(2), 17 Am. St. Rep. 598, 602(2), was an action founded on negligence for injury to plaintiff by a sky rocket. The Morgan and Conway cases are cited and discussed and we think it clear therefrom that the *dictum* of the Morgan case (and the holding of the Conway case) is not to be followed where the injury is unintentional and plaintiff's case rests upon negligence. [See also Dowell v. Guthrie

(Banc, 1893), 116 Mo. 646, 654, 22 S. W. 893, 895, and the criticism of the Conway case in McLaughlin v. Marlatt, supra.]

Morgan v. Mulhall (Div. I, 1908), 214 Mo. 451, 454, 456, 114 S. W. 4, 5, where intentional and negligent injuries are mentioned, really involved an intentional harm. The petition charged that "the defendant by shooting into a crowd of people negligently shot the plaintiff," and defendant's counsel submitted the cause in the appellate court on the theory "defendant shot at Frank Reed, a dangerous and desperate character, missed him and the bullet wounded plaintiff in the abdomen." Defendant had an intention to shoot and an intention to harm; and in such circumstances the intention to harm is transferred from the intended to the actual victim. [Carnes v. Thompson (Mo.), 48 S. W. (2d) 903, 904[3], and authorities there cited.] These observations are, we think, also applicable to Atchison v. Procise (Mo. App.), 24 S. W. (2d) 187, although, from the opinion, the pleadings sounded in negligence.

Hartman v. Hoernle (Mo. App.), 201 S. W. 911, discusses only an intentional harm.

■ We understand defendant concedes a submissible case of actionable negligence. Ordinary care on defendant's part was a very high degree of care. [McLaughlin v. Marlatt, 296 Mo. 656, 672, 246 S. W. 548, 553[6], among others.] The shooting of White may have been accidental, but was not unavoidably accidental. The test is not whether the injury was accidental but whether defendant was free from blame. Whether defendant's thumb slipped off the hammer or defendant pulled the trigger when the gun was pointed three feet above the floor was defendant's fault and actionable.

■ Was there substantial evidence upon which to predicate defendant's instruction on contributory negligence? We think not. Our examination of defendant's authorities (we specifically mention the cases stressed), in so far as they sustain defendant, discloses the evidence most favorable to the defendants established that the persons shot were participating in the transactions. We do not discuss distinctions between an assumption of the risk and contributory negligence.

In McLaughlin v. Marlatt, 296 Mo. 656, 672(III), 246 S. W. 548, 553[8], plaintiff threw clods to attract the attention of Marlatt and his companions, then concealed himself in tall grass and made the grass wave or wiggle in such a way as to induce the belief that a fox or other wild animal was hiding therein. If so, he actively participated in the event leading to his being shot.

In Green v. Standard Oil Co. (Mo. App.), 199 S. W. 746, 748[1], defendant Chartrand was shooting at and had wounded a rat, which, endeavoring to get away, was crawling toward plaintiff, who said: "There he is now, get him." Chartrand then fired, the shot striking plaintiff's ankle.

Bahel v. Manning, 112 Mich. 24, 27, 32, 70 N. W. 327, 328, 330, 36 L. R. A. 523, 525, 527, 67 Am. St. Rep. 381, affirmed a judgment for plaintiff. Defendant's evidence showed that plaintiff had been giving defendant advice on fixing defendant's gun, presumably unloaded, for twenty minutes and while defendant had the gun pointed in plaintiff's direction; that plaintiff twice said: "Snap it off, it wont hurt;" and that defendant did so, without moving the gun, and plaintiff was shot. Defendant's negligence in not knowing the gun was loaded was established. The effect of the ruling was that the instruction on contributory negligence, quoted in part in defendant's brief, gave defendant every advantage he was entitled to.

Petry v. Hopping, 97 N. J. L. 418, 118 Atl. 105, expressly stated the case turned on the issue of defendant's actionable negligence *vel non*. It affirmed a judgment for plaintiff. There was no occasion to discuss contributory negligence as a matter of fact. The general observation, among others, that plaintiff's contributory negligence was properly submitted to the jury was a mere assertion made in conclusion and no part of contested issues reasoned and ruled. Defendant shot with intent to harm another, and the discussion is devoted principally to an intentional wrong. Plaintiff and defendant were in defendant's store. Three robbers entered, covered plaintiff but failed to promptly cover defendant, who escaped to the kitchen, found a gun and, extinguishing the kitchen light, passed to the adjoining storeroom. The robbers took flight and plaintiff, starting to leave, opened the door to the darkened kitchen without warning and was shot by defendant.

Defendant's defense appears to be based upon an implied consent by White to the actions of defendant and the others; that is, White assumed the risk of injury. Defendant argues all were in on the fun "but disregarded the risk;" that an adult, exercising reasonable care, would not expose himself to the risk White took without cautioning against or requesting that firing pistols in the small room cease or removing himself to a place of safety. Individuals participate in dangerous businesses, sports, and pastimes without being negligent. Contributory negligence, as things go, postulates negligence. Defendant also says he was not engaged in an unlawful act and that danger to White was contingent upon the premature and accidental discharge of defendant's gun and the ricocheting of the bullet. If so, defendant was not actionably negligent in procuring his gun with the intent to shoot at the floor, or in his actions, at least, until he started the upward movement of the gun to shoot. So long as defendant was not negligent, how was White contributorily negligent? White was not killed by reason of defendant shooting into the floor. Defendant's raising of the gun and permitting his thumb to slip from the hammer or his pulling of the trigger while the gun was pointed about three feet above the floor constituted the proximate actionable negligence.

1118

White was present with the knowledge and consent of defendant and for their mutual benefit. He knew shots had been discharged at the floor, but the evidence does not show he participated therein. Defendant instructed White to make out defendant's order for merchandise. They were friends. White was behind the counter engaged in executing defendant's instructions when shot. So far as contributory negligence is concerned he had a right to rely upon his friend's implied assurance that the shot would be directed at the floor and his friend's implied assurance that he could proceed with making out the order, at least until defendant's acts gave rise to a possibility he could no longer rely upon said assurances. White's mere presence in the store did not constitute negligence. [Dowell v. Guthrie, 99 Mo. 653, 666(5), 12 S. W. 900, 903(5), 17 Am. St. Rep. 598, 605(5).] He was not charged with knowledge defendant intended to raise the pistol. While contributory negligence is usually a question for the jury, there is no substantial evidence of record upon which to predicate contributory negligence on the part of White from the inception of actionable negligence on the part of defendant. [Consult Atchison v. Procise (Mo. App.), 24 S. W. (2d) 187, 190.]

The judgment is reversed and the cause is remanded. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.