**Cecil Roscoe LEE, Appellant,**

**v.**

**Wilfred ZUMBEHL, Respondent.**

**No. 51259.**

Supreme Court of Missouri,
In Banc.

Dec. 12, 1966.

Rehearing Denied Jan. 9, 1967.

Deeba, DeStefano, Sauter & Herd, by James B. Herd, St. Louis, for appellant.

Murphy & Kortenhof, Edward E. Murphy, Jr., St. Louis, for respondent.

EAGER, Judge.

Plaintiff sued for personal injuries sustained when he, as a pedestrian, was

struck by defendant's car. There was a nine-man verdict for defendant and, after plaintiff's motion for a new trial was overruled, he appealed. The prayer of his petition was for $40,000 and he sustained substantial injuries, so we have jurisdiction.

The injury occurred on March 18, 1962, at the intersection of Chouteau and Boyle Avenues in St. Louis, at some time between 1:00 and 1:30 a. m. Plaintiff lived approximately five blocks from that location. He was a carpenter, 68 years of age at the time of his injury; the work at his occupation was somewhat seasonal or dependent upon the weather, and he had worked at his home that day, cleaning and painting. The day and evening were clear and dry. From plaintiff's testimony the facts now related fairly appeared. At about 11:00 p. m. he went to Brugger's Tavern or Cafe at the southwest corner of the intersection in question. He had previously been there "pretty regularly." There he had one beer, sat in a booth and read a newspaper, and went to sleep. As closing time neared he awakened, about 1:00 a. m. or a little later; very shortly he left the place. Mr. Brugger also went outside to check the doors on a merchandise chute leading in from the sidewalk, and they talked briefly. Plaintiff's intended course of travel was across Chouteau, from the southwest corner to the northwest corner, directly north in a marked crosswalk. He testified that Chouteau was about 80 feet wide, with two traffic lanes and a parking lane on each side. Plaintiff's photographs show a double painted center line, and the street surface is apparently blacktop, although plaintiff testified that the paving in the intersection was "brick." No parked cars were so located as to require consideration. Boyle Avenue is approximately 60 feet wide. There were street lights on each corner of the intersection. Chouteau is straight at that location, and substantially level. As plaintiff was ready to start across the street, the driver of an eastbound car stopped and asked him for directions; he gave them, and the car moved on, turning

left (north) on Boyle. That car does not enter further into our consideration. After a few more words with Mr. Brugger, plaintiff started directly north, in the crosswalk, across Chouteau. When he was "about" at the center of the street, he saw a car approaching on Chouteau from east to west, about one short block to his right, and at a distance which he estimated to be 250 to 300 feet; he could not and did not estimate the speed of that car, either at the time he saw it or when he was struck; that car was, at the time, the only car moving within his vision in any direction. Its lights were burning. Plaintiff was wearing a light brown topcoat, which extended below his knees, and a gray hat.

After plaintiff saw the car coming from his right, he looked back "straight ahead," that is, to the north, and walked north at what he described as a normal pace, probably "about" four miles an hour. He did not look again to his right, toward the car, until he was "about 15 foot" from the north curb, and then the car was "right on" him, possibly six feet away, and hit him before he "got out of the road." He admitted that he walked approximately 25 feet from the center line "without ever looking" to his right. He testified that he heard no horn or brakes, and that when he was struck he was about five feet from the north curb; he was knocked westward and landed "pretty close to the curb." When asked if there was any reason at all why he had not looked back to check the car after he left the center line, he said: "None that I know of, no." His eyesight was good so far as he knew.

Mr. Brugger testified, as plaintiff's witness, in substance as follows: that plaintiff arrived at about ten or ten-thirty in the evening and left about one or five minutes after one; that plaintiff had one beer; that he walked out on the sidewalk when plaintiff left to check the metal doors; that he watched plaintiff all the way as he crossed the street and until he was struck, although he said there was no reason for his doing so; that plaintiff was walking,

not fast, not slow, but at a "steady gait" for a man of his age; that when plaintiff reached the center of Chouteau the driver of a car apparently asked directions and then moved on; that plaintiff then proceeded north across Chouteau in the crosswalk; that he saw the car which struck plaintiff when it was at approximately the east curb line of Boyle, and that it was traveling at about 30 miles an hour; that it did not change its speed, and struck plaintiff when he was "over three quarters" of the way across Chouteau; that plaintiff was about three or four feet from the curb when he was struck; that he did not see plaintiff change his speed as he walked, nor did he hear any horn or brakes; that the car was traveling in the traffic lane nearest to the curb, and that it stopped approximately 150 feet west of the crosswalk. Mr. Brugger stood on the sidewalk and watched plaintiff, although he was the bartender, his place was still open, and there were customers inside. In the view we take of the case it will be unnecessary to relate further evidence.

This case was first argued in Division One, but was later transferred to the Court in Banc on the Court's own motion, without the adoption of an opinion. The plaintiff, as appellant, raised points of alleged error in the admission of testimony, misconduct of a juryman, and the giving of an instruction on contributory negligence. The first point raised by the defendant in respondent's brief (and raised again in a supplemental brief for the Court in Banc) was that plaintiff made no submissible case because he was guilty of contributory negligence as a matter of law.

■ We have concluded that, upon the wholly uncontradicted and unquestioned evidence of plaintiff himself, he was contributorily negligent as a matter of law. We have recited his evidence in considerable detail, in so far as it affects this question; also that of his witness Brugger. The most material facts are: that at 1:00 to 1:30 a. m., from the center of this wide street, he saw a car with its lights on, coming toward him from his right on that part of the street which he must traverse; that there was *no* other traffic in sight; that he estimated the car to be 250–300 feet away; that he could not and did not estimate the speed of the car, but then turned away, looked to the north and walked to the north at a "normal" pace without ever looking again toward the car until he had walked approximately 25 feet, and this, as he admitted, without any reason that he knew of; that when he finally looked to his right again, the car was "right on" him, and struck him when he was from three to six feet from the curb. We hold that any reasonable and competent person would and should have anticipated danger and a probability of a collision under these circumstances, and would have continued to watch the approaching car, taking some action to avoid it when a collision became imminent. The great likelihood of a collision was specifically shown by the fact that one did occur, although the car was not being driven (according to Brugger) at an excessive speed, and the car did not alter its speed or course, nor did plaintiff.

It is not to be expected that any decided case would be found on identical facts. In several of our cases, however, the principles declared indicate the result here. In Iman v. Walter Freund Bread Co., 332 Mo. 461, 58 S.W.2d 477, it appeared that plaintiff, in crossing westward on a wide street and as he approached the center, saw defendant's truck turn into that street about 300 feet to his right; it then proceeded southerly in a straight line at a distance of about 20 feet from the west curb line; plaintiff testified that he watched it approach steadily at about 30 miles an hour, but he nevertheless walked steadily on until he reached the far rail of the streetcar tracks, directly in the path of the truck; he then realized that the driver was looking off to one side, and it was too late for him to escape. The court said in part, loc. cit. 479–480, 58 S.W.2d loc. cit.: "While plaintiff showed that defendant was negli-

gent in more ways than one in running its truck against plaintiff, yet he convicted himself of contributory negligence in deliberately walking in front of and in the line of travel of the on-coming truck. * * It is thus stated by plaintiff that while observing this truck coming thirty miles per hour straight down the street car rail which he was about to cross he deliberately or carelessly walked in front of and into the pathway of the coming car when it was in plain view and about thirty feet distant, too late, as it proved, for either party to avert the collision."

In Carpenter v. Kansas City Public Service Co., Mo., 330 S.W.2d 797, plaintiff dismounted from a bus which had stopped at an angle in an intersection; he then started across the heavily traveled roadway after having looked to the west at a time when the bus itself blocked the view in that direction except for a distance of 20 feet beyond the end of the bus; the traffic on that side of the road was coming from the west. Plaintiff then walked on without looking again and was struck by a car. He testified that he "was going to look around to the west" again, but that he was struck before he did so. Plaintiff was familiar with the road, the traffic and the intersection. The court said, loc. cit. 798, 800: "On cross-examination he stated that when he left the bus he intended to go straight across the highway to the south; that after looking west at a time when he could see only 20 feet beyond the rear of the bus he never again looked toward the west prior to being struck; that if he had looked west when he reached a point even with the rear of the bus he could have seen 300 feet in that direction; that the highway was level for quite a distance and there was nothing to obstruct his view toward the west after reaching a point even with the rear of the bus; that he never saw the car that struck him. * * * We are convinced from plaintiff's own testimony that he was guilty of contributory negligence as a matter of law (under the facts and circumstances disclosed) in walking into the eastbound lanes of said highway, beyond a point even with the rear of said bus, without first looking for cars approaching from the west, when, if he had looked, he could have seen for a distance of at least 300 feet and would have observed the imminent approach of the vehicle with which he collided and when he had actual knowledge of the likelihood of the approach and presence of eastbound vehicles at that very time and place. * * * Under the facts and circumstances disclosed by the evidence, it would be difficult to conceive of a more negligent act than the conduct of plaintiff in walking from behind the bus into the center of the eastbound portion of said highway without first looking to the west in order to ascertain whether any car was approaching sufficiently close to his line of travel as to create a danger of his being struck thereby. We do not think reasonable minds would differ upon the premise that a failure to look, under the circumstances, constituted a failure on the part of plaintiff to exercise ordinary care for his own safety and that such failure was negligence which directly contributed to cause his injury."

A very similar situation was presented in Danzo v. Humfeld et al., Mo., 180 S.W.2d 722, where the pedestrian plaintiff was also held guilty of contributory negligence as a matter of law in walking out into a traffic lane from in front of a double parked truck without first looking adequately. In Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663, plaintiff walked westward across a street at a point where streetcar tracks crossed it; he walked parallel to and within 12–18 inches of the north rail without looking behind him, after having looked only casually for 50–75 feet eastward when he started. According to his evidence, he was struck by the overhang of a streetcar after he had stepped up on the opposite curb. The court said, loc. cit. 667: "A glance over his shoulder would have disclosed to plaintiff the presence of the approaching car. Had he made reasonable use of his sense of sight and of his mental faculties, either when he first approached

the tracks on the east side of the street or as he was proceeding across the street, he would not have been injured. In our opinion all reasonable minds would agree that plaintiff did not exercise ordinary care to protect himself from injury."

See also, to the same general effect: Dempsey v. Horton et al., 337 Mo. 379, 84 S.W.2d 621; Wolfson v. Cohen, Mo., 55 S.W.2d 677; Woods v. Moore, Mo.App., 48 S.W.2d 202; McElwee v. Curtiss-Wright Corp. (D.C.E.D.Mo.), 70 F.Supp. 97; Adkins v. Boss, Mo., 290 S.W.2d 139; State ex rel. Kansas City Public Service Co. v. Bland, 354 Mo. 79, 188 S.W.2d 650; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575; Burton v. Moulder, Mo., 245 S.W.2d 844.

In the very recent case of Bond v. Kansas City Transit Co., Mo., 401 S.W.2d 440, the plaintiff, a passenger on a bus, stepped off the bus onto an area of ice and snow which was irregular and bumpy; the bus had stopped with the rear end three or four feet out from the curb, thus causing plaintiff's predicament. She knew of the general icy and snowy conditions. In her own testimony she stated that she had looked at the sidewalk and it seemed clear, but that she did not look at the place where she stepped until after she had started her last step down, when it was too late to retract. The court said there, loc. cit. 442–445: "On cross-examination plaintiff testified that after the bus had stopped and the door opened, there was nothing to obstruct her view of the condition of the street and sidewalk. This was also true as she stood on the middle and on the lower steps before she descended from the last step to the street. She testified that she did not look at the ground until after she was in the process of stepping from the bottom step to the ground itself, at which time it was too late to stop. * * * While a plaintiff is not under a duty to *look closely* for danger where there is no reason for him to anticipate danger, the converse is true and if there is reason to anticipate danger, the defendant is under a duty to exercise ordinary care to look and ascertain if danger is present. * * * She specifically testified several times that she simply did not look. The street was covered between the bus and curb with rough, rutty ice and snow and plaintiff fell thereon. This rough ice and snow was visible. * * There is no basis for any inference that she couldn't see the street or the distance of the bus from the curb. She testified that there was nothing to obstruct her view. * * * Plaintiff did not exercise ordinary care and was guilty of contributory negligence as a matter of law. We think the facts reasonably cannot admit of any other conclusion."

The plaintiff, appellant here, filed no reply brief nor did he (as was his option) file any supplemental brief when the case was transferred to the Court in Banc. He has not, therefore, answered defendant's brief and supplemental brief on this point. His counsel have cited several authorities in support of a contention that the trial court should not have given an instruction on contributory negligence because it was unsupported by the evidence. The only Missouri cases so cited are Samuels v. Klimowicz, Mo., 380 S.W.2d 418, and Chandler v. Mueller, Mo., 377 S.W.2d 288. The first holds essentially that an instruction must be supported by the evidence and that each party may request instructions on the theory of his own evidence. The second held that where the only evidence was that plaintiff was keeping a lookout, it was error to give a contributory negligence instruction on the supposed failure to do so. In a federal case so cited, Kroger Company v. Doane (C.A.8), 280 F.2d 1, it was held that a contributory negligence instruction was properly refused because the evidence did not show that plaintiff knew of any likelihood of peril (in a door being opened suddenly and unexpectedly) or of any circumstances which might indicate such, and that there was no knowing exposure to peril; in other words, that there was no actual or constructive knowledge of danger. None

of these cases are relevant on the facts now before us. We regret that plaintiff has not briefed the point, but we have examined a very substantial number of authorities. We do not reach a discussion of defendant's negligence.

On plaintiff's evidence we are forced to the conclusion that he was guilty of contributory negligence as a matter of law, and that defendant's motion for a directed verdict on that ground at the conclusion of the evidence, should have been sustained. We find that the facts are such as to permit no other reasonable conclusion. In this view of the case, the specific points of error raised by appellant become immaterial.

The judgment is affirmed.

All concur.