Lucy TURPIN, Appellant,

v.

Lloyd SHOEMAKER, Respondent.

No. 52768.

Supreme Court of Missouri,
Division No. 2.

May 13, 1968.

David H. Clark, Kansas City, William G. Johnson, Versailles, for appellant; Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel.

William H. Sanders, Dean F. Arnold, Thomas I. Osborne, Kansas City, Thomas G. Woolsey, David A. Yarger, Versailles, for respondent; Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel.

EAGER, Judge.

This opinion is written upon reassignment. The suit is one by the widow of Loyd Turpin to recover damages for his wrongful death. The verdict and judgment were for the defendant. The death was caused by the discharge of a revolver held in the hand of the defendant, but it is merely contended that the shooting was negligent, and not intentional. Defendant pleaded and relied upon contributory negligence and upon the doctrine of assumption of risk. The Court submitted instructions on both. The suit was filed in Morgan County but was sent to Moniteau County on change of venue. The deceased was 43 years old and was generally engaged in different forms of construction work. The defendant operated a dry cleaning business in Versailles.

Defendant and his wife had invited the Turpins and Mr. and Mrs. Lawson Nichols to their home on the evening of September 25, 1965; they had all been friends for several years and, to some extent at least, the men had hunted and fished together. The home was in the country near Versailles; its size and arrangement are not accurately described. The Turpins arrived at about 8:00 o'clock; Shoemaker was finishing his dinner. Thereafter the four persons played a card game called "Tripo-

li" in the living room or "TV" room (adjoining the kitchen) until the Nichols couple arrived at about 9:00 o'clock, with their small child. All three men were, it seems, somewhat interested in revolvers and pistols (there is a distinction). Nichols brought with him an English "Webley" revolver which Turpin had previously traded to him for a motor; when Nichols arrived the card game ceased temporarily and, for some reason, he brought out the revolver; he was more or less kidded by someone about it as being a "Limey" gun. There is some indication that he may have contemplated trading it again. Thus encouraged, Shoemaker got his own revolver and its holster and belt. Some description of the gun is necessary. It is a .22 caliber Ruger target pistol, 6 shot, single action, and possibly of a foreign make; the cylinder does not release and break out to the left as in the ordinary revolver, and the only way to load, unload or inspect the chambers which hold the shells (aside from taking the gun apart) is to pull out to the right and downward a small, curved metal block, described as a "half moon," so that one chamber is then fully exposed and the bare edge of another. It is thus obvious that it is much more difficult to load, unload or inspect this gun than the ordinary revolver. The cylinder can only be rotated when the hammer is on "half-cock." There was some evidence that when defendant produced that gun he stood in a hallway at the foot of the stairs or "in the doorway" (the gun then being fully loaded with magnum 22's), placed it in readiness to rotate the partially open cylinder, held it up, and did rotate the cylinder from one chamber to the next, letting the shells fall on the floor; also, that he then held it downward, rotated the cylinder some more and supposedly checked it again. However, he could only see clearly one chamber at a time. He, Shoemaker, then picked up the shells and put them in his pocket, but did not count them; he hung the gun and holster on the post at the bottom of the stairway. Defendant testified to this checking of the gun, and Mrs. Nichols (for the plaintiff) partially verified it. The evidence is not clear as to where Turpin was during this proceeding, and there is no evidence definitely establishing that he saw it. Shoemaker testified that at the time "the others" were in the room where they had been playing cards and were "getting up" from the table; by fair inference the "others" would include Turpin, the deceased. Defendant testified that, when he hung up his gun, he asked if "they" wanted to look at it.

During the course of the evening each of the six had two or three bourbon whiskey highballs; just how many, specifically, by each one is not shown. After the events related all six played "Tripoli" in the kitchen until about 10:00 or 10:30, when the Nichols child became fussy and they decided to leave. As the party broke up, the three men again discussed guns and someone proposed a "quick-draw" contest between Turpin and Shoemaker, the purpose being to see which one could draw and "dry-fire" his gun first. Nichols handed Turpin his English revolver (which Turpin had previously owned) and Turpin broke it open and looked at it to make sure that it was not loaded. He did not look at defendant's gun or inquire about it. Defendant strapped on his belt, holster and gun without rechecking the gun, and Turpin stuck his gun under his belt with the grip (or handle) protruding. Someone counted 1–2–3 and upon the count of 3 each would, and did, draw his gun and pretend to shoot, clicking the hammer on the firing pin. The evidence describes in some detail how defendant fired his single action revolver by "fanning" the hammer in western style, but we deem that unnecessary to our discussion. The men faced each other at about six feet; the "clicks" were audible. No one was certain who did the counting; Mrs. Turpin thought it possible that she had counted once; Nichols counted once or twice; plaintiff did not claim that she had protested the performance, but neither did she have any part in promoting it. It is not clear just how many times the draw was per-

formed before the fatal shot, probably either two or three times. Finally, as the Nichols were at the door to leave, and apparently without an independent count, the contestants drew and fired again and a bullet was discharged from Shoemaker's gun, severing an artery in Turpin's abdomen. An ambulance and a doctor were procured but he died before reaching the hospital. Shoemaker had previously participated in such contests; it was not shown that Turpin had.

The only questions raised on this appeal involve the defenses of assumption of risk and contributory negligence. There can be no doubt whatever that plaintiff made a submissible case of negligence against the defendant. Plaintiff's counsel have violated our Rule 83.05, V.A.M.R., by failing to set out the controverted instructions in their brief. We note this oversight as a caution to the Bar. They did assign every possible objection to defendant's instructions in their thirteen-page motion for a new trial, so we are not concerned with any waived objections. Defendant moved for a directed verdict both at the close of plaintiff's case and at the conclusion of all the evidence. Both motions were overruled. His counsel contend here that the latter motion was erroneously overruled because the suggested defenses were shown as a matter of law.

Plaintiff's verdict-directing Instruction No. 2, aside from its formal parts, hypothesized—"Second: That defendant failed to adequately inspect his Ruger revolver to ascertain it was unloaded before pointing and firing said revolver at plaintiff's decedent, Loyd Turpin, and Third: That defendant was thereby negligent," concluding that plaintiff should recover "unless you believe that plaintiff is not entitled to recover by reason of Instructions Numbers 4, 5 and 6." Thus the sole submission of negligence was upon a failuure to adequately inspect. The two instructions of defendant in which we are particularly interested are No. 4 and No. 6. We set them

out in full except that we eliminate one typographical error No. 6.

No. 4: "Your verdict must be for defendant (even if you believe Loyd Turpin was not himself negligent) if you believe: First, that Loyd Turpin knew and appreciated the danger of firearms. Second, that Loyd Turpin voluntarily exposed himself to a known and appreciated danger of a quick draw contest in which defendant would draw his revolver, aim it at Loyd Turpin, and discharge the hammer against the firing pin."

No. 6: "Your verdict must be for the Defendant, whether or not Defendant was negligent if you believe: First, if Loyd Turpin either: Voluntarily engaged as a participant in and engaged in a 'quick draw' contest with real firearms; or Failed to inspect the revolver used by Defendant in said 'quick draw' contest to see if it was loaded; and Second, Loyd Turpin's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and Third, such negligence of Loyd Turpin directly caused or directly contributed to cause any damage Plaintiff may have sustained."

■ Instruction No. 5 was a similar submission of contributory negligence on the part of Mrs. Turpin for her participation, for permitting the contest, or failure to protest. Without further discussion, we hold that these facts did not make a submissible issue of her negligence, and we need not consider that instruction further.

Instruction No. 4 was a submission of assumption of risk. It is vague in its hypotheses, but the principal question for us is whether or not these facts justified any such instruction at all. The doctrine, so far as Missouri is concerned, has been continued if indeed not conceived, in controversy. It was generally held applicable in master and servant cases, but the great bulk of that application has been eliminated by the Workmen's Compensation Act and the Federal Employers' Liability Act. It

seems probable that at some time in the near future our courts may well say that in all other cases the defenses can and should be handled, with equal fairness to the parties and with *much* less confusion, by confining the issues to negligence and contributory negligence, even in those cases where the contributory negligence may consist only of entering into a dangerous situation, actually or constructively known to the plaintiff. We would thus eliminate the theoretical and sometimes confusing idea of a *voluntary consent,* which is essential to an assumption of risk. See Cathey v. De Weese, Mo., 289 S.W.2d 51. But recent cases of this Court have applied the doctrine, with restrictions, to ordinary tort actions, and the writer has determined to leave the "coup de grace" to a future case, since we hold here that the doctrine as recently announced by this Court, is not applicable at all under these facts, and a full rejection of the doctrine would presumably be dicta.

 Assumption of risk is based upon a voluntary consent, express or implied, to accept the danger of a known and appreciated risk; it may sometimes include the acceptance of a risk arising from the defendant's negligence, but one does not ordinarily assume the risk of any negligence which he does not know of and appreciate. Prosser on Torts, 2nd Ed., Ch. 10, pp. 303 et seq.; Terry v. Boss Hotels, Inc., Mo., 376 S.W.2d 239 (containing a full review of the Missouri law); Kungle v. Austin, Mo., 380 S.W.2d 354; Cathey v. De Weese, Mo., 289 S.W.2d 51; Hathaway v. Evans, Mo.App., 235 S.W.2d 407; Fletcher v. Kemp, Mo., 327 S.W.2d 178; Schamel v. St. Louis Arena Corp., Mo.App., 324 S.W.2d 375; Keaton v. Good, Mo.App., 350 S.W.2d 119; 65A C.J.S. Negligence § 174. It involves a knowledge of the danger and an intelligent acquiescence in it, whereas contributory negligence arises out of some departure from the standard of reasonable conduct. Contributory negligence may, however, arise from entering into a risk which the plaintiff *should* have discovered. Prosser, supra.

A few opinions say that a plaintiff does not assume the risk of negligence. Page v. Unterreiner, Mo.App., 106 S.W.2d 528; McCormick v. Lowe & Campbell Athletic Goods Co., 235 Mo.App. 612, 144 S.W.2d 866. It seems, however, that what those courts really mean is that one does not assume a risk arising from negligence which he does not know of. When negligence is present the doctrine is not applicable in master and servant cases. Schaum v. Southwestern Bell Telephone Co., 336 Mo. 228, 78 S.W.2d 439; Terry v. Boss Hotels, Inc., supra. But see the explanation in Prosser, supra, loc. cit. 309. And that author further says, at loc. cit. 309–310: "'Knowledge of the risk is the watchword of assumption of risk.' Ordinarily the plaintiff will not be taken to assume any risk of conditions or activities of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself. * * * His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence."

██ It will be impossible for us to review the facts of the various cited cases in the scope of this opinion. In Kemp, supra, where plaintiff was injured in an explosion while welding on a metal drum which had contained "Zerone," the issue was held to be submissible, but apparently upon the theory that the labels on the barrel, its distinctive coloring, and the other circumstances, could be found by the jury to have given plaintiff knowledge of the full danger. There the Court said, in part, 327 S.W.2d at loc. cit. 183: "The rationale of the doctrine is that one who voluntarily exposes himself to a known and appreciated danger due to the negligence of another may not recover for an injury resulting from such exposure, even though the injured person may have been in the exercise of due care for his own safety at the time." Defendant relies on various other cases as supporting the contention that plaintiff, as

a matter of law, assumed the risk which resulted in his death, emphasizing the known danger of playing with "real firearms." The conclusion is unsound on these facts. We have considered all of defendant's cases and they are not controlling or particularly persuasive here. In Terry v. Boss Hotels, Inc., Mo., 376 S.W.2d 239, our last real discussion of assumption of risk, plaintiff admittedly knew of the complete danger, including the fact that it was caused by defendant's continuing negligence. We conclude that plaintiff here was not fully informed of defendant's negligence and that he did not assume the risk of what actually occurred. Assumption of risk is frequently analogized to the theory of "volenti non fit injuria,"—which translated (Brandt v. Thompson, Mo., 252 S.W.2d 339) means: that to which one assents is not deemed in law to be an injury. From that view of the doctrine we see clearly that Turpin did *not* assent to playing "quick draw" with defendant's gun loaded. The fact that defendant was negligent did not per se exclude the application of the doctrine here, but before Turpin could intelligently *consent,* he was required to know the *real danger.* Bullock v. Benjamin Moore & Co., Mo.App., 392 S.W.2d 10. We find that he did not. The fact that firearms may be considered "inherently dangerous" was not sufficient to give Turpin knowledge of what was actually being done. We hold (although statements in some of the cases are most confusing) that when we reach the question of the required *anticipation* of a danger which is not actually known, whether defendant is negligent or not, we reach the issue of contributory negligence, and eliminate assumed risk; at least, so far as Missouri is concerned. We see no other way in which to maintain even a pretended distinction between the two overlapping and confusing theories. Neither Instruction No. 4 nor any other instruction on assumed risk should have been given.

Defendant also insists that Turpin was contributorily negligent as a matter of law. Most of the cited cases have no applicability to these facts, merely stating the general principles which we all supposedly know. Lee v. Zumbehl, Banc, Mo., 410 S.W.2d 79; Brooks v. Stewart, Mo., 335 S.W.2d 104, 81 A.L.R.2d 508; McLaughlin v. Marlatt, 296 Mo. 656, 246 S.W. 548; Danzo v. Humfeld, Mo., 180 S.W.2d 722; Shields v. Costello, Mo.App., 229 S.W. 411. In Bahel v. Manning, 112 Mich. 24, 70 N.W. 327, 36 L.R.A. 523 (1897), upon which defendant places considerable emphasis, the plaintiff sat in a position where he was in the line of fire of a rifle while the defendant was trying to repair it and also when defendant finally pulled the trigger to test it. Defendant was held to have been negligent under the specific terms of a Michigan statute as well as at common law. The Court further held that there was a submissible issue as to plaintiff's contributory negligence, but *not* that he was negligent as a matter of law.

■ If the evidence here had conclusively shown that Turpin had seen (or otherwise knew of) the full procedure used by defendant in supposedly emptying and checking his gun, we would be inclined to hold that there was no submissible issue of contributory negligence. But it does not. Under these circumstances we hold that a jury could find that he should have *anticipated* such a likelihood of danger as to cause him to make a reasonable investigation of the status of defendant's pistol, i. e., whether it contained any live ammunition. *What* investigation he should have made is more properly a question of fact than of law. We do not believe that all reasonable men would agree that Turpin was non-negligent in proceeding as he did. He took the precaution of looking into his own gun before he snapped it at the defendant. We shall not extend to this case the doctrine sometimes used, especially in automobile cases, that one is entitled to assume that the other party will not be negligent.

In White v. Bunn, 346 Mo. 1112, 145 S.W.2d 138, plaintiff was in a place which

appears to have been a combination liquor and merchandise store; he was there strictly on business and was standing behind the counter. Defendant and one or more others fired shots from pistols into the floor; on the fatal shot defendant's pistol went off and killed plaintiff's decedent before he had it pointed at the floor. There was nothing whatever to warn deceased that the pistol would be pointed at him. The Court held that plaintiff was not contributorily negligent. It there said in part, at loc. cit. 141: "While contributory negligence is usually a question for the jury, there is no substantial evidence of record upon which to predicate contributory negligence on the part of White from the inception of actionable negligence on the part of defendant." There the shot and the actionable negligence were substantially simultaneous and deceased had no way of knowing that anyone even intended to point a gun towards him until the moment he was shot. The case is not persuasive here.

We hold, as already indicated, that contributory negligence of the deceased was a submissible issue. We do not approve Instruction No. 6, by which the issue was submitted. Defendant may consider the various objections which have been made to the instruction; it does not submit the issue as discussed in this opinion. The real contributory negligence, if there was any, was the act of engaging in the contest without making a reasonable investigation of the status of defendant's revolver. In accordance with the principles of MAI this may be submitted very simply, with the details of the contentions, pro and con, left to argument.

Complaint is also made here of the burden of proof, Instruction No. 7. The present objections will not arise upon a retrial, since no assumption of risk instruction will be given.

The judgment is reversed and the cause is remanded for further proceedings as indicated in this opinion.

HOLMAN, J., concurs.

DONNELLY, Acting P. J., dissents as per dissenting opinion filed.

FINCH, P. J., not sitting.

## DISSENTING OPINION

DONNELLY, Acting Presiding Judge.

I agree that the doctrine of assumption of risk is not properly in this case. However, I do not concur in the position taken by the principal opinion as to the question of contributory negligence on the part of Loyd Turpin.

Under the facts in this case, the defenses of assumption of risk and contributory negligence do not differ in legal effect. "Assumption of risk is based upon consent, assent, or 'waiver' of the results coming from the plaintiff's conduct in entering into the place of peril, or upon the course of chosen conduct. Such being the case, this consent must be (a) voluntary, and (b) with knowledge, comprehension, or 'appreciation' of the risks involved. 65 C.J.S. Negligence, § 174, p. 848 et seq.; 38 Am.Jur. Negligence, § 173, p. 847; Terry v. Boss Hotels, Inc., Mo., 376 S.W.2d 239; Fletcher v. Kemp, Mo., 327 S.W.2d 178, 183, 186. Where plaintiff claims the defendant owes plaintiff an affirmative duty and a wrong is done in violation of that duty, and as a consequence of that wrong and as a choice of alternatives the plaintiff enters upon a course of conduct which involves a danger, the end product may be what some writers refer to as assumption of risk in the 'secondary sense.' In such situation there is considerable controversy and conflict as to whether the conduct of the plaintiff is really contributory negligence. It is said that it is a 'phase' of contributory negligence. It is also said that contributory negligence and assumption of risk overlap at this point. But irrespective of doctrinal nomenclature, all authorities

hold that the plaintiff's conduct *in respect to* *'voluntariness'* and *'appreciation'* of the risk is to be judged by the standard of that of a reasonably prudent person exercising ordinary care for his own safety under the circumstances existing at the time. * * *" Bullock v. Benjamin Moore & Company, Mo.App., 392 S.W.2d 10, 13.

One who participates in a "quick draw" contest, or a scuffle, or a sparring match, assumes "the risks ordinarily incident thereto." 7 A.L.R.2d 704, 714; Cf. Gibeline v. Smith, 106 Mo.App. 545, 80 S.W. 961; McAdams v. Windham, 208 Ala. 492, 94 So. 742, 30 A.L.R. 194. However, this is true only "so long as the game is played in good faith and without negligence." Harper and James, The Law of Torts, Vol. 2, § 21.5, p. 1181; Cf. Page v. Unterreiner, Mo.App., 106 S.W.2d 528; Keaton v. Good, Mo.App., 350 S.W.2d 119.

A "quick draw" contest is not inherently dangerous if the guns used are not loaded. The determinative factor in this case is that if defendant had completely unloaded his gun there would have been no risk for Turpin to assume and no danger to guard against. Turpin was entitled to assume that defendant would exercise a very high degree of care in handling the gun, particularly when it was anticipated that he would point it at Turpin and would pull the trigger. Turpin was not required to assume that defendant would act negligently. There was no duty on his part to guard against negligent conduct on the part of defendant until he was aware of the dangerous condition the conduct created. He had no knowledge of the dangerous condition until the gun fired. The essential question is whether defendant adequately inspected the gun to ascertain it was unloaded. In these circumstances, can we say that Turpin was negligent in failing to ascertain that defendant inadequately inspected the gun? I think not.

I am of the opinion that there "is no substantial evidence of record upon which to predicate" contributory negligence on the part of Turpin *"from the inception of actionable negligence on the part of defendant."* (Emphasis mine.) White v. Bunn, 346 Mo. 1112, 1118, 145 S.W.2d 138, 141.

I respectfully dissent.